MARK A. ELLINGSEN, ISB No. 4720
WITHERSPOON KELLEY
Attorneys & Counselors
The Spokesman Review Building
608 Northwest Boulevard, Suite 300
Coeur d'Alene, ID  83814
Ph: (208) 667-4000
Fax: (208) 667-8470
Email:  mae@witherspoonkelley.com

*Attorneys for Creditor Washington Trust Bank*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re | No. 18-01287-TLM |
| LAWRENCE W. ESQUIVEL and TARA MICHELLE ESQUIVEL, | Chapter 13 |
| Debtors. | |

WASHINGTON TRUST BANK'S MEMORANDUM IN SUPPORT OF MOTION TO CONVERT CHAPTER 13 TO 7, OR IN THE ALTERNATIVE DISMISS CHAPTER 13

Creditor Washington Trust Bank ("WTB"), by and through its attorney Mark A. Ellingsen of the firm Witherspoon Kelley submits this Memorandum in Support of WTB's Motion to Convert/Dismiss.

**I.    BACKGROUND**

1.     On or about June 8, 2012, Tara Esquivel submitted a written financial statement to WTB (hereinafter referred to as "Financial Statement") in support of a $202,000 loan which purportedly disclosed the nature and extent of her assets and income.  A copy of the Financial Statement is attached hereto as Exhibit A.  In reliance upon the accuracy of the financial information contained in the Financial Statement, WTB loaned to Tara Esquivel the total sum of

$202,000 so that she could purchase a 2012 26' Gatling Boat, with two 550 horse power engines (herein collectively referred to as the "Boat") and a Trailer from a company known as Treasure Valley Marine. Additionally, pursuant to the loan documents, Tara Esquivel agreed to give WTB a security interest in the Boat as collateral for this loan.

2. A bill of sale was given to WTB to evidence Tara Esquivel's purchase of the Boat and Trailer. Additionally, a Certificate of Title was issued related to the Boat and the Trailer identifying that the Boat and Trailer were in existence as collateral for the loan. A copy of this Certificate of Title of the Boat and Trailer was given to WTB as proof of the existence of this collateral. A copy of this Certificate of Title of the Boat is attached hereto as Exhibit B and incorporated by reference herein. A copy of the Certificate of Title to the Trailer is attached hereto as Exhibit C. A copy of a document evidencing Tara Esquivel's agreement to grant WTB a first position security interest in this collateral is attached hereto as Exhibit D and was additionally provided to WTB. Tara Esquivel also represented to WTB at the time that the loan was approved that the Boat was in existence and that she was purchasing it from Treasure Valley Marine.

3. Pursuant to Tara Esquivel's request, the proceeds of the loan were wired directly to Treasure Valley Marine for the purchase of the Boat and Trailer by Tara Esquivel in June 2012. Thereafter, monthly payments on the loan were made by either Tara Esquivel or Christopher Bohnenkamp and/or Treasure Valley Marine from approximately July 2012 through September 2015. Thereafter, all monthly loan payments ceased to be made to WTB. Thereafter, WTB attempted to repossess the Boat and Trailer and ultimately discovered that despite the documentation that had been given to WTB, the Boat and Trailer had apparently

never been constructed and therefore WTB had never received a perfected security interest in the Boat and Trailer as agreed upon by Tara Esquivel in the underlying loan documents.

4. Pursuant to the loan documents, Tara Esquivel was required to provide insurance coverage related to the Boat. Somehow, even though the Boat and Trailer had never been constructed, Tara Esquivel had obtained insurance coverage for the Boat from an insurance carrier known as Farm Bureau Mutual Insurance Company ("Farm Bureau"). Tara Esquivel filed a claim of loss with the Farm Bureau, claiming that the Boat and Trailer had been stolen, in order to obtain funds to repay the WTB loan. Tara Esquivel was examined under oath by Farm Bureau related to the claim and Tara Esquivel's insurance claim was denied, purportedly on the grounds of "collusion." Tara Esquivel did not file suit against the insurance carrier for bad faith challenging the insurance carrier's denial of the claim.

5. Due to Tara Esquivel's failure to pay the loan and WTB's inability to repossess and liquidate the Boat and Trailer as repayment for the loan, WTB filed suit against Tara Esquivel for breach of the loan. Tara Esquivel contested the suit filed by WTB, but ultimately the District Court for Ada County entered judgment against her on November 17, 2017, in the sum of $241,587.52. A copy of the judgment is attached hereto as Exhibit E.

6. Thereafter, a debtor's exam was conducted by WTB on November 28, 2017 wherein Tara Esquivel was examined, under oath, about her assets, including those assets which had been identified in her written Financial Statement–including the nature and extent of her ownership interest reflected on this Financial Statement in Auto Claims Direct, Inc. stock ("ACD Stock") and a parcel of real property/duplex located at 446 Sinex Avenue Pacific Grove, California ("hereinafter referred to as "Duplex"). At this debtor's exam, Tara Esquivel provided false statements under oath where she claimed that Lance W. Esquivel had conveyed his interest

in the Duplex to his parents in 2008/2009.  See Debtor's exam transcript attached hereto as Exhibit F, p. 8, ll. 12-25–p. 12, ll. 1-14; *see also* Exhibit F, p. 64, ll. 17-25–p. 72, ll. 1-20.  The Deeds attached hereto as Exhibits G, H and I identify the transfer of a 25 percent ownership interest to Lawrence W. Esquivel in the Duplex from his grandmother.  Despite what Tara Esquivel testified at the debtor's exam, there are no known recorded deeds evidencing a transfer of Lawrence W. Esquivel's interest in the Duplex to his parents.  Furthermore, the 2012 Financial Statement which was executed by Tara Esquivel identifies that Tara Esquivel maintained a 25 percent ownership interest in the Duplex as of June 8, 2012–approximately four years after Tara Esquivel claims that their interest in this Duplex had purportedly been conveyed from Lance W. Esquivel to his parents.

      7.      Subsequent to this Debtor's exam, WTB proceeded to garnish Tara Esquivel's wages from her employer ACD, Inc.  WTB had to retain counsel in California in order to conduct this garnishment and incurred further legal expenses in having to do so due to a failure by Tara Esquivel to propose any sort of repayment plan to WTB.

      8.      WTB garnished Tara Esquivel's wages from approximately June 2018 through September 30, 2018.  Thereafter, the garnishment was ceased due to the Esquivels' bankruptcy filing with this Court on October 1, 2018.  The Esquivels' purpose in filing the bankruptcy was to prevent WTB from being able to continue to garnish the substantial income stream (approximately $18,000 per month) that Tara Esquivel was receiving from ACD, Inc.

      9.      In the Esquivels' bankruptcy schedules, WTB is identified as the creditor who has the largest unsecured claim against Tara Esquivel.  At the time of their bankruptcy filing, the balance of the claim involving WTB's judgment was $254,883.23–including all post-

judgment collection fees and costs. The next largest nonpriority unsecured creditor is Capital One with a scheduled claim of $30,000. Dkt. No. 24, Schedules E/F.

10.   In the Esquivels' bankruptcy schedules, the Esquivels only disclose that they have an ownership interest in one parcel of real property and that this parcel of real property is located in Idaho. Dkt. No. 24, Schedules A/B, § 1.1. The Esquivels' fail to disclose in Schedules A/B, Section 1.1, that Lance W. Esquivel currently owns a 25 percent ownership interest in the Duplex. According to the Financial Statement provided by Tara Esquivel, the value of the Duplex dating back to 2012 was not less than $231,260. Again, the three deeds reflecting Lance W. Esquivel's 25 percent ownership interest in the Duplex are attached hereto as Exhibits G, H and I.

11.   At the 341 Meeting of Creditors on November 5, 2018, Lance W. Esquivel was asked whether the Duplex was being rented–since no one from his family apparently lives in the Duplex. Lance W. Esquivel testified that he did not know, but presumably this Duplex is being rented to third parties. Lance W. Esquivel was asked by the Chapter 13 Trustee to provide a copy of any lease related to the Duplex, but to date has not provided this document. In Lance W. Esquivel's schedules, Dkt. No. 24, Schedule A/B, Lance W. Esquivel does not disclose his 25 percent interest in lease proceeds from the Duplex.

12.   In the Esquivels' bankruptcy schedules, the Esquivels identify Tara Esquivel as having a 9 percent ownership interest in ACD, Inc., but they claim that the value of this ACD Stock interest is "unknown." Dkt. No. 24, Schedules A/B, § 19. However, in the Financial Statement provided, Tara Esquivel identifies that her 21 percent stock interest in ACD, Inc. as being worth $1,575,000. While Tara Esquivel sold approximately 12 percent of ACD Stock back to ACD in 2012, based upon the valuation provided by Tara Esquivel in the Financial

MEMORANDUM IN SUPPORT OF MOTION TO CONVERT/DISMISS–5
K:\WDOCS\CDAMAIN\92400\0129\C0217551.DOCX

Statement, her remaining 9 percent interest in ACD would be worth approximately $677,250– an amount more than sufficient to pay off the debt owed to WTB. At the 341 Meeting of Creditors, Tara Esquivel testifies in detail how she came up with the $1,575,000 valuation of the ACD Stock on the financial statement by "looking at what I thought the company was making and factored in five times that would be the value of the company. And 21% of that equals 15, one million five hundred and seventy five." *See* November 5, 2018 341 Meeting of Creditors Transcript attached hereto as Exhibit J, Tr. p. 79, ll.10-25–p. 82, ll. 1-11.

13. In the Esquivels' bankruptcy schedules, the Esquivels do not identify having any interest in a Trust. Dkt. No. 24, Schedule A/B, §§ 25 and 32. The Deed attached as Exhibit K reflects that an Esquivel Family Trust is in existence. However, at the 341 Meeting of Creditors conducted on November 5, 2018, Lance W. Esquivel denied having any knowledge of whether he was a beneficiary of this Trust, but to date, despite the requests of the Chapter 13 Trustee, has failed to produce a copy of the Trust to confirm whether or not he does have an interest in this Trust.

14. On November 5, 2018, Lance W. Esquivel answered questions under oath at the 341 meeting of creditors. Lance W. Esquivel made false statements under oath at the meeting of creditors which included denying that he had any ownership interest in the Duplex and denying that he ever had any knowledge about having an ownership interest in the Duplex. This false statement under oath by Lance Esquivel is reflected by that portion of a 2017 Debtor's Exam transcript involving Tara Esquivel attached hereto as Exhibit F wherein Tara Esquivel states that Lance Esquivel had an ownership interest in the Duplex and that he allegedly maintained that ownership interest in the Duplex until approximately eight years ago

when he purportedly conveyed this interest to his parents as a "gift" for their retirement. Ex. F, Tr. p. 8, ll. 12-25–p. 10, ll. 1-20.

15. On November 5, 2018, Tara Esquivel answered questions under oath at the 341 meeting of creditors. Tara Esquivel made false statements under oath at the meeting of creditors which included claiming that she did not know who input the financial information onto the Financial Statement. Ex. J, p. 102, ll. 1-25–p. 103, ll. 1-14. Tara Esquivel later contradicts this statement under oath wherein she acknowledges that she was the one who involved in creating the financial information in the Financial Statement, no one else was involved, and that the reference to the Duplex in the Financial Statement was something she provided and that she had come to understand that they had ownership interest in the Duplex through past conversations with Lance W. Esquivel's parents. Ex. J, Tr. p. 107, ll. 5-25–p. 109, ll. 1-10.

16. On November 19, 2018, Tara Esquivel answered questions under oath at the continued 341 Meeting of Creditors. Tara Esquivel again contradicted her prior testimony under oath regarding her involvement in creating the information contained within the Financial Statement. On November 19, 2018 Tara Esquivel made false statements under oath by now claiming that she had no involvement in inputting any of the financial information into the Financial Statement and had no knowledge of the information contained in the Financial Statement when it was submitted to WTB in 2012 and that the information must have been created by Chris Bohnenkamp. *See* November 19, 2018 341 Meeting of Creditors Transcript attached hereto as Exhibit L, Tr. p. 9, ll. 5-25–p. 11, ll. 18-25; *see also* Ex. H, Tr. p. 21, ll. 23-25–p. 26, ll. 1-16. This false statement is born out by the prior testimony she provided in Paragraph 15 above wherein she acknowledged her sole involvement in creating the Financial

Statement. This false statement is also borne out by her detailed testimony on November 5, 2019 described in Paragraph 12 above wherein she described how she came up with the $1,575,000 valuation of her ACD stock on the Financial Statement based upon reviewing ACD's financial performance that year and then multiplying this number by 5 and then apportioning her 21 percent interest to this.

## II.   RELIEF REQUESTED

WTB submits that pursuant to 11 U.S.C. § 1307(c), that the Esquivels' Chapter 13 case must be converted or dismissed for lack of good faith/bad faith. As will be pointed out in detail herein, the Esquivels committed loan fraud when they obtained the funds from WTB in 2012 by using a false financial statement and have committed further bad acts thereafter, including the filing of this Chapter 13 petition, for the sole purpose of preventing WTB from recovering the funds due and owing to WTB. Furthermore, the Esquivels have provided ongoing false oaths in their debtor's exam, their bankruptcy schedules, and in their sworn 341 Meeting of Creditors testimony that warrants conversion or dismissal. Additionally, the Esquivels, through their false oaths, have effectively concealed valuable assets and have made it impossible for this Court to consider their Chapter 13 Plan under a liquidation analysis.

### A.   Esquivels Have Acted in Bad Faith

In *In Re: Leavitt* the Ninth Circuit Court of Appeals held that a Chapter 13 case can be dismissed or converted to a Chapter 7 if it is filed in bad faith. *In Re: Leavitt,* 171 F.3d 1219, 1223 (9th Cir. 1999). A finding of bad faith does not require a finding of debtor's fraudulent intent. *In Re: Leavitt,* F.3d 1219 at 1224-25. "To determine if a petition has been filed in bad faith, courts are guided by the standards used to evaluate whether a plan has been proposed in bad faith." *Eisen v. Curry (In re: Eisen)* 14 F.3d 469, 470 (9th. Cir. 1994). In reading this

MEMORANDUM IN SUPPORT OF MOTION TO CONVERT/DISMISS–8
K:\WDOCS\CDAMAIN\92400\0129\C0217551.DOCX

determination, a bankruptcy court must review the "totality of the circumstances" to determine if the petition was filed in bad faith. *Id., Goeb v. Heid (In re: Goeb)* 675 F.2d 1386, 1390-91 (9th Cir. 1982). Further, in *In re: Leavitt,* the Ninth Circuit expanded on *Eisen* and held that when considering dismissal of a chapter 13 case due to bad faith in its filing, a bankruptcy court should consider:

    (1)    Whether the debtor misrepresented facts in his petition, or plan, unfairly manipulated the Code, or otherwise filed his petition in an inequitable manner;

    (2)    The debtor's history of filings and dismissals;

    (3)    whether the debtor intended to defeat state court litigation; and

    (4)    whether egregious behavior is present.

In this case, there are clearly several of the above noted factors which evidence a bad faith Chapter 13 filing by the Esquivel's

1. **The egregious conduct of the Esquivels warranting dismissal/conversion; and Tara Esquivel's egregious conduct in submitting a false financial statement to WTB in order to obtain a loan.**

Tara Esquivel obtained the underlying loan from WTB by submitting a false Financial Statement which WTB relied on to its detriment. The Financial Statement contained representations regarding Tara Esquivel's ownership interest in a number of assets which were grossly exaggerated, and which were patently false. Despite what Tara Esquivel represented on the Financial Statement, Tara Esquivel never had an ownership interest in the Duplex referenced in the Financial Statement. Instead, the Duplex was the sole and separate property of her husband–Lance W. Esquivel–who was not a party to the loan. Furthermore, despite what Tara Esquivel represented on the Financial Statement, Tara Esquivel did not own ACD stock which was worth $1,575,000 in 2012. This fact is evidenced by the fact that when Tara Esquivel sold a

large portion of her stock in 2012, she only received roughly $125,000 for it.  Furthermore, the Daggett Creek Road property she references on the Financial Statement has never been worth $675,000.  As noted in her bankruptcy schedules, she values this same property at no more than $400,000.  When asked the value of this property at the 341 meeting of creditors, Tara Esquivel acknowledged that the property has never been worth more than $530,000.  Ex. J, p. 72, ll. 10-25–p. 73, ll. 1-6.

The debt which Tara Esquivel owes to WTB is clearly a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(2) due to Tara Esquivel's misconduct.

**2.   Tara Esquivel & Lance Esquivel's egregious behavior in making false statements under oath at a 341 Meeting of Creditors and in prior Debtor's exam.**

As previously noted, Tara and Lance Esquivel have engaged in an ongoing pattern of false oaths in both a Debtor's exam and in their 341 Meeting of Creditor's testimony to try and distance themselves from the false representations that Tara Esquivel made in the financial statement and to conceal Lance W. Esquivel's ownership interest in the Duplex.  As detailed above, Tara Esquivel made a false oath at the Debtor's exam wherein she claimed that their ownership interest in the Duplex had been conveyed to Lance Esquivel's parents in 2008/2009.  Tara and Lance Esquivel have both made false statements under oath at the 341 Meeting of Creditors to essentially conceal Lance W. Esquivel's ownership interest in the Duplex.  Even after being presented with a deed which evidenced this ownership interest, Lance W. Esquivel continued to deny having any ownership in it and continued to deny having any knowledge of such interest even as of the date of the 341 meeting of creditors–even though this ownership interest in the Duplex had been disclosed in 2012 by Tara Esquivel via the Financial Statement.

MEMORANDUM IN SUPPORT OF MOTION TO CONVERT/DISMISS–10
K:\WDOCS\CDAMAIN\92400\0129\C0217551.DOCX

Further, as detailed above Tara Esquivel has made patently false statements under oath regarding her involvement in creating the financial information contained in the Financial Statement which was provided to WTB in order to induce WTB to grant the loan.

Basically, the testimony provided by Tara and Lance Esquivel constitutes perjury and the willful concealment of the Duplex as an asset of the estate constitutes bankruptcy fraud. At a minimum, this egregious misconduct warrants dismissal or conversion.

**3. Tara & Lance Esquivel's egregious behavior in concealing the value of ACD stock.**

In their Schedules, the Esquivels identify their ownership interest in ACD, but claim that the value of this stock is "unknown"–thereby making it effectively impossible to assess the Esquivels' Chapter 13 Plan under a liquidation analysis. However, in the past, Tara Esquivel had knowledge of the value of this stock when she sold over 50 percent of her stock in ACD for the sum of $125,000 in 2012. Ms. Esquivel acknowledges that there is in existence a written document which memorialized this sale of stock but refuses to turn a copy of this document over to the Chapter 13 Trustee and despite the request of the Chapter 13 Trustee, refuses to try and obtain a copy of it from her employer–who is the party who purchased the stock from her. The Esquivels' actions in concealing the value of this stock, coupled with their refusal to tender documents related to her past stock sale which may shed light on the value of this stock, makes a liquidation analysis assessment of the Debtor's proposed Chapter 13 Plan impossible.

**4. The Esquivel's misrepresented facts in their bankruptcy petition and schedules.**

The Esquivels misrepresent the value of the Daggett Creek Road property in their bankruptcy petition and schedules. Instead of the value of $401,000 which is represented in their schedules, the Daggett Creek Road Property is worth no less than $530,000. Tara Esquivel

MEMORANDUM IN SUPPORT OF MOTION TO CONVERT/DISMISS–11
K:\WDOCS\CDAMAIN\92400\0129\C0217551.DOCX

claimed that this same property was worth $675,000 in the 2012 Financial Statement which she provided to WTB. Tara Esquivel also acknowledged at the November 5, 2018 Meeting of Creditors that the Daggett Creek Road Property had been acquired in 2005 for the sum of $445,000 and the last appraisal of it in 2016 during their refinance revealed that it was worth $530,000.

The Esquivels' concealed and misrepresented their interest in the Duplex in their bankruptcy schedules. While they disclose the Daggett Creek Road property, they do not disclose Lance W. Esquivel's ownership interest in the Duplex. This asset is a very valuable asset–being valued in the 2012 Financial Statement at not less than $231,000. Further, presumably the Duplex is being leased and Lance W. Esquivel would be entitled to one-fourth of the lease payments. This Court clearly would not have become aware of this interest had it not been addressed by WTB's counsel at the 341 meeting of creditors.

While not confirmed as of yet, the Esquivel's may also have made false statements in their schedules regarding Lance W. Esquivel's beneficial interest in the Esquivel Family Trust.

**5.    The Esquivel's intended to defeat State court litigation–essentially the garnishment of Tara Esquivel's wages pursuant to WTB's judgment.**

WTB obtained a judgment against the Esquivels in its state court litigation in November 2017. In June 2018 WTB began garnishing Tara Esquivel's wages. On October 1, 2018, the Esquivels filed their bankruptcy petition which bars any further garnishment from the judgment. In the Debtors' proposed Chapter 13 Plan, it would appear that WTB would not receive any funds from the proposed plan payments and the Esquivels would ultimately receive their discharge without having to pay WTB any further.

Clearly, the Esquivels' bankruptcy filing was a way to defeat WTB's enforcement of its judgment and to effectively preclude WTB from recovering any further funds to satisfy the judgment.

**CONCLUSION**

The test for determining cause to convert or dismiss is: Given the factors identified in this memorandum, it is overwhelmingly clear that the Esquivels are abusing the Chapter 13 system as a way to bar WTB's collection efforts. They have made false statements under oath at the 341 Meeting of Creditors and in their bankruptcy schedules to try and conceal the nature and extent of their assets–all assets which could be used to pay WTB's judgment. Additionally, the Esquivels have not made any effort to propose a Chapter 13 Plan which would make any payments to WTB.

In sum, the only issue which should be left for this Court to decide is whether it is in the best interest of the creditors to have the case dismissed or the case converted to a Chapter 7 liquidation. Since there are valuable assets which could be liquidated by the Chapter 7 Trustee, it clearly is in the best interests of creditors and the estate that this case be converted to a Chapter 7, rather than dismissal. Upon conversion, the Chapter 7 Trustee can then liquidate Esquivels' valuable nonexempt assets, like the ADC stock, the one-fourth interest in the Duplex, and the one-fourth interest in the leasehold payments in the Duplex, and possibly

Lance W. Esquivel's interest in the Esquivel Family Trust and creditors, like WTB, presumably can finally receive payment on their claim.

Dated this 12th day of December, 2018.

WITHERSPOON KELLEY

/s/ Mark A. Ellingsen
Mark A. Ellingsen
Attorneys for Washington Trust Bank

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 12, 2018, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

Jeffrey P. Kaufman
jeffrey@dbclarklaw.com
*Counsel for Debtor*

U.S. Trustee
ustp.region18.bs.ecf@usdoj.gov
*U.S. Trustee*

Kathleen A. McCallister
kam@kam13tru7stee.com
*Chapter 13 Trustee*

Jesse A.P. Baker
ecfidb@aldridgepite.com
*Attorneys for Cenlar FSB*

AND I FURTHER CERTIFY that on such date I served the foregoing on the following non CM/ECF Registered Participants in the manner indicated:

Via first-class mail, postage prepaid, addressed as follows:

Lawrence William Esquivel
Tara Michelle Esquivel
71 Daggett Creek Road
Boise, ID  83716

/s/ Connie P. Maslowski
Connie P. Maslowski, Paralegal